IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOSEPH CATLIN MIXSON and
VIRGINIA BREANN MIXSON,

    Plaintiffs,

v.                                                     Case No. 1:21-cv-30-AW-GRJ

C.R. BARD INC. and BARD
PERIPHERAL VASCULAR, INC.,

    Defendants.
_____/

## ORDER DENYING SUMMARY JUDGMENT

This is a products liability case involving an interior vena cava (IVC) filter implanted in Plaintiff Joseph Mixson. ECF No. 33 (SAC) ¶ 1. Defendants C.R. Bard and Bard Peripheral Vascular moved for summary judgment,[1] arguing some claims are time-barred under Texas law. This order denies that motion.

### I.     BACKGROUND

The basic facts are undisputed. Mixson suffered combat injuries resulting in amputations. ECF No. 47-2 (PFS) at 2-4. Following his amputations, Mixson developed deep vein thrombosis and pulmonary embolism. *See id.* at 5. Doctors at a Texas Army Medical Center implanted a G2 IVC filter, *id.* at 4-5, a medical device

---

[1] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

1

Defendants designed, manufactured, marketed, and sold, *see* ECF No. 33 ¶¶ 22, 24. In March 2008, some six months after implantation, doctors recommended removing the filter because it had "migrated down to the L2 disk space and tilted." PFS at 7, 11; *see also* ECF No. 47-4 at 62:12-19; ECF No. 47-7 at 1-2. The effort to remove the filter was unsuccessful because it was "firmly adhered to" and had perforated the vein's wall. PFS at 9, 11.

In 2012, Mixson retained counsel and agreed to a tolling arrangement with Defendants. *See* PFS at 2; ECF No. 47-5. He then sued in 2016. ECF No. 1. He alleges that the filter—which he says has now fractured too (*see, e.g.*, ECF No. 51 at 3)—is defective. He asserts five claims: (1) negligent design, manufacture, and sale; (2) negligent failure to warn; (3) negligent misrepresentation; (4) fraudulent misrepresentation; and (5) fraudulent concealment. SAC at 30, 32, 33, 35, 37. Defendants contend these claims are untimely under Texas's two-year statute of limitations. ECF No. 47 at 2. Mixson counters that Florida's four-year statute applies—and that his claims were timely under Texas law anyway. ECF No. 51 at 3. Defendants' motion thus presents a conflict-of-laws issue.

This order denies the motion because Defendants have not pointed to record evidence sufficient for the court to conclude Texas's statute of limitations governs under Florida's conflict-of-laws rules.

2

## II.   DISCUSSION

"A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citation omitted). For tort issues, Florida—the forum state—has adopted the Restatement's "significant relationships test." *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (adopting Restatement (Second) of Conflict of L. §§ 145-46 (Am. L. Inst. 1971)).[2]

Under this test, the law of the state where the injury occurred applies "unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties"—in which case that state's law applies. Restatement (Second) of Conflict of L. § 146.[3] In determining whether a state has a significant relationship, courts consider four contacts:

---

[2] Because the specific issue here is the applicable statute of limitations, Florida's borrowing statute—which precludes causes of action that would be time-barred where they arose (Fla. Stat. § 95.10)—is relevant too. But Florida applies the same significant relationships test to determine where a cause of action arose. *See Bates v. Cook, Inc.*, 509 So. 2d 1112, 1114-15 (Fla. 1987). So § 95.10 does not change the outcome.

[3] Mixson tries to differentiate *Bishop* and *Bates* to argue § 146 doesn't apply here. *See* ECF No. 51 at 10-11 ("Florida's borrowing statute . . . modifies the traditional application of the Restatement . . . ."). But he relies on a misreading of the case law. *Bates*—in considering whether *Bishop*'s significant relationships test applies to borrowing statute issues—directs courts to apply that test to statute of limitations questions "just as in the case of other issues of substantive law." *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1113, 1114-15 (Fla. 1987). And *Bishop* clearly adopted the test set forth in §§ 145 *and* 146. 389 So. 2d at 1001. Later cases confirm this

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* § 145(2). These contacts inform application of seven choice-of-law principles:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2). If the significant-relationships analysis yields no clear result, courts revert to the place of injury to supply the applicable law. *E.g.*, *Mezroub v. Capella*, 702 So. 2d 562, 565 (Fla. 2d DCA 1997).

Defendants say Texas's statute of limitations applies here, both because the alleged injury occurred in Texas and because Texas has a more significant relationship to the litigation than Florida. ECF No. 47 at 8-9 ("[F]actors (a), (b), and (d) all point to Texas . . . . Indeed, the only connection this case has to Florida is that Plaintiff is a Florida resident."). But "[t]o discharge the analysis mandated by the

---

scope. *See, e.g.*, *State Farm Mut. Auto. Ins. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006) (citing *Bishop* for conflict-of-laws rule applicable to statute of limitations issues); *Garcia v. Pub. Health Tr. of Dade Cnty.*, 841 F.2d 1062, 1067 (11th Cir. 1988) (concluding same §§ 145-46 analysis resolves both liability and statute of limitations issues).

4

Restatement (Second), [courts] must first determine which sovereigns have interests in applying their laws" to a case. *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1568 (11th Cir. 1990). So, even if Defendants are right that Texas is the place of injury,[4] I must still identify the other forums § 145 implicates to determine whether any of those forums have a more significant relationship to this case than Texas.

Yet Defendants cite no record evidence as to certain § 145 contacts. First, Defendants assume Texas is where the injury-causing conduct occurred, presumably because Mixson's filter was implanted there. But the allegedly tortious conduct here

---

[4] Mixson disputes this. First, he says his presence in Texas—where the filter was implanted and initially malfunctioned—was fortuitous. ECF No. 51 at 13-14 (Mixson "was in a coma in Iraq when the military decided to transport him to . . . Texas for treatment."). Fortuity may indeed dampen a state-of-injury's interest—at least where other § 145 contacts point persuasively to a different state's law. *See, e.g.*, Restatement (Second) of Conflict of L. § 145 cmt. e ("[W]hen the place of injury . . . is fortuitous . . . the place where the defendant's conduct occurred will usually be given particular weight . . . ."); *McNeil v. CSX Transp., Inc.*, 832 So. 2d 227, 228-29 (Fla. 2d DCA 2002) (concluding Florida statute of limitations applied despite out-of-state-injury, where both parties were Florida-based and defendant sold plaintiff train ticket there); *Mezroub*, 702 So. 2d at 565-66 ("For a statute of limitations issue, when one state is both the residence and place of relationship for all parties, these contacts are far more important than the place of injury."); *Chapman v. DePuy Orthopedics, Inc.*, 760 F. Supp. 2d 1310, 1313-14 (M.D. Fla. 2011) (concluding Virginia statute of limitations applied despite artificial hip failing fortuitously in Florida). Second, Mixson argues that—because of this fortuity—the relevant injury is instead the filter's later fracture while he resided in Florida. ECF No. 51 at 14. But Mixson's complaint doesn't allege his filter fractured; instead, it asserts injury due to the filter's migration, adherence, and perforation. *See* SAC ¶¶ 19, 141-46. At any rate, there are factual disputes underlying the issue of which state has the closest relationship.

is not the implantation—it's the design, manufacture, marketing, and sale of the filter. *See, e.g.*, *Judge*, 908 F.2d at 1566, 1569 (noting states where vehicle involved in accident was designed and manufactured may have interest); *Kramer v. Piper Aircraft Corp.*, 868 F.2d 1538, 1540 (11th Cir. 1989) ("[T]he district court [on remand] may deem Florida to have a more significant relationship to this case than Virginia. The plane was designed, manufactured and tested in Florida and the Kramers are now residents of Florida."); *Kirchman v. Novartis Pharms. Corp.*, 2014 WL 2722483, at *4 (M.D. Fla. June 16, 2014) ("New Jersey is the place of injury-causing conduct because it is where Novartis made its corporate decisions regarding the labeling, packaging and warning of the drugs . . . ."); *Chapman v. DePuy Orthopedics, Inc.*, 760 F. Supp. 2d 1310, 1313-14 (M.D. Fla. 2011) (placing injury-causing conduct in state where medical device was designed and manufactured). Defendants do not cite evidence as to (or otherwise address) these locations. Second, Defendants cite no evidence about their places of business, other than to note their citizenship for diversity purposes. *See* ECF No. 51 at 5; *cf. also Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1298 (11th Cir. 1999) (observing that non-principal places of business with "sizeable business activities" may be relevant for § 145 purposes, "especially when the activities are directly related to the relevant litigation").

### III. CONCLUSION

Without evidence as to each potentially relevant contact under § 145, the court cannot fully analyze the conflict-of-laws issue the Defendants' motion presents. So Defendants have not met their burden of showing entitlement to judgment as a matter of law based on Texas's statute of limitations. Accordingly, Defendants' motion (ECF No. 47) is DENIED.

SO ORDERED on May 31, 2022.

s/ <em>Allen Winsor</em><br>United States District Judge