## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**JOSEPH CATLIN MIXSON and**
**VIRGINIA BREANN MIXSON,**

      **Plaintiffs,**

**v.**                                    **Case No. 1:21-cv-30-AW-MJF**

**C.R. BARD INC. and BARD**
**PERIPHERAL VASCULAR, INC.,**

      **Defendants.**

_____/

## ORDER GRANTING SUMMARY JUDGMENT IN PART

Joseph Mixson and his wife sued C.R. Bard and Bard Peripheral Vascular, alleging several claims relating to an interior vena cava (IVC) filter. ECF No. 68 (TAC) ¶ 1. Defendants C.R. Bard and Bard Peripheral Vascular (collectively C.R. Bard) moved for summary judgment. ECF No. 58. This order grants the motion in part.

## I.

The summary judgment standard is settled. C.R. Bard is entitled to summary judgment if it can show that "there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). There is a "genuine" dispute if "the evidence is such that a reasonable jury could return a verdict" in the Mixsons' favor, and a "material" fact is one that could affect the outcome. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once C.R. Bard points to materials in the record that show no material facts are disputed, the Mixsons must then cite "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation omitted).[1]

## II.

### A.

First, C.R. Bard argues that Texas's statute of limitation applies and bars at least some of the Mixsons' claims. The Mixsons respond that Florida's statute of limitations—not Texas's—applies and that their claims are timely. Because this is a diversity case in a Florida forum, Florida's conflict-of-laws rules control. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Florida has adopted the Restatement's "significant relationships test." *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (adopting Restatement (Second) of Conflict of L. §§ 145-146 (Am. L. Inst. 1971)). Under that test, the law of the state where the injury occurred applies "unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." Restatement (Second) of Conflict of L. § 146.

---

[1] Parties must cite "particular parts of materials in the record" to support factual assertions. Fed. R. Civ. P. 56(c)(1)(A). And "[t]he court need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). In my discretion, I decline to consider materials not pinpoint cited in the briefs or addressed in this order. *See* N.D. Fla. Loc. R. 56.1(F).

The significant-relationship test examines four contacts to determine if a state has a significant relationship: (1) "the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." *Grupo Televisa*, 485 F.3d at 1240 (quoting § 145). "These [contacts] are considered 'according to their relative importance with respect to the particular issue.'" *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (quoting *Bishop*, 389 So. 2d at 1001). And they inform application of seven choice-of-law principles:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of L. § 6(2). The two most important principles are the second and third—the policies of the forum state and the policies and interests of the other interested states. *See Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1569 (11th Cir. 1990).

If the significant-relationship test yields no clear result, courts revert to the place of injury to supply the applicable law. *Bishop*, 389 So. 2d at 1001; *Mezroub v.*

*Capella*, 702 So. 2d 562, 565 (Fla. 2d DCA 1997); *see also Frank v. Drury Hotels Co.*, 2022 WL 4007805, at *2 (11th Cir. Sept. 2, 2022).

The choice of law may be different for different issues. *Judge*, 908 F.2d at 1571 n.6; *see also* Restatement (Second) Conflict of L. § 145 cmt. d. Here, as to the statute of limitations, Florida and Arizona both have more significant interests than Texas does.

The first inquiry is the place where the injury occurred. The parties agree the injury occurred—at least in part—in Texas. But the Mixsons contend it partly occurred in Florida, too. C.R. Bard does not necessarily agree, but at the summary-judgment stage, I must view the evidence in the Mixsons' favor.[2] And with some injury in Florida, this factor does not weigh heavily for Texas law. Moreover, even if the injury were entirely in Texas, this would not strongly favor application of Texas law because the location of that injury was fortuitous. *See, e.g.*, Restatement (Second) of Conflict of L. § 145 cmt. e ("[W]hen the place of injury . . . is fortuitous . . . the place where the defendant's conduct occurred will usually be given particular weight . . . ."). Mixson was in Texas for treatment by happenstance. He

---

[2] After C.R. Bard filed its summary-judgment motion, the Mixsons filed a third amended complaint, adding the filter fracture as an alleged injury. *See* ECF No. 68. The Mixsons relied on that injury to argue Florida was the site of the injury, ECF No. 71, and they cited evidence that imaging from November 2013—years after Mison left Texas—showed the filter fractured, ECF No. 51-1 at 14. So a reasonable jury could conclude that at least some injury was in Florida.

was not living there—the military sent him there for treatment. ECF No. 47-3 at 36 (35:12-23).

The second inquiry is where the conduct causing injury occurred. This factor is more significant when the injury is in multiple states or if "the place of injury cannot be ascertained." *See Grupo Televisa,* 485 F.3d at 1241 & n.1 (cleaned up). The parties agree that some acts leading to the design, manufacture, and sale of the filter occurred in Arizona. Motion at 9; Resp. at 17. The Mixsons claim some actions were in New York. Resp. at 17. And they claim additional actions in Florida too.[3] *Id.* Regardless of whether C.R. Bard's conduct happened in New York or Florida, it is clear none occurred in Texas. C.R. Bard's decisions in designing, manufacturing, and selling the product—the acts that the Mixsons claim caused the injuries— occurred outside Texas. So the causation contact does not favor Texas law.

The third inquiry—domicile—does not favor Texas law either. No party is from Texas.

The fourth contact—the center of the relationship between the parties—does not weigh for any state. There is no real "center" of the parties' "relationship." *See*

---

[3] The Mixsons assert that the failure to warn also extended to the treating physicians in Florida. Defendants claim the failure to warn could only have applied to the physicians in Texas. In either case, however, the actions in the design, manufacture, and sale would primarily have occurred in Arizona. While *effects* of the cause may have been seen in Texas or Florida, the *cause* of those effects—at least under the Mixsons' case theory—came from Arizona.

*Tune v. Philip Morris Inc.*, 766 So. 2d 350, 355 (Fla. 2d DCA 2000) ("To the extent that a manufacturer of such a consumer product, which is nationally or internationally marketed and advertised and is consumed over a long period, has a 'relationship' with any ultimate consumer, that relationship cannot reasonably be 'centered' in any specific community in our mobile society."); *see also George v. Wright Med. Tech., Inc.*, 2020 WL 5880479, at *3 (N.D. Fla. Feb. 7, 2020) (explaining that there is no "place where the parties' relationship is centered" when "the parties have no 'relationship' other than the single sale of the medical device that was implanted").

In sum, these four contacts do not show any significant relationship between this dispute and Texas. And this is particularly so when the contacts "are considered 'according to their relative importance with respect to the particular issue'"—the statute of limitations. *Michel*, 816 F.3d at 694 (citation omitted). Texas has no real interest in time-barring products liability cases between noncitizens, involving injury that occurred (at least in part) outside Texas, and relating to products designed and manufactured outside Texas. Florida, on the other hand, has an interest in allowing its residents to redress injuries, and Arizona and New Jersey (where defendants reside) have interests in limiting actions against their in-state manufacturers and designers. *See Judge*, 908 F.2d at 1570-71 (noting Florida's interest in protecting its plaintiff citizen and Michigan's strong interest in protecting

its resident product manufacturer); *Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co.*, 944 F.2d 809, 813 (11th Cir. 1991) ("Because she lives in Florida, that state has an interest in providing her a forum in which to redress her injuries."); *see also Tune*, 766 So. 2d at 353 ("There is no reason why a Florida court should feel constrained to obey . . . laws that would limit or restrict this Florida citizen's access to a Florida court or to the remedies that a Florida court would otherwise provide.").

Both Florida and Arizona (and perhaps New Jersey) have more significant interests than Texas as to the statute of limitations. So C.R. Bard has not shown that Texas's statute of limitations bars any claim.

**B.**

Next, C.R. Bard argues that the Mixsons have not shown a safer alternative design—a necessary component of a negligent-design claim under Texas law. C.R. Bard acknowledges that Florida has no such requirement, Motion at 15 n.3, and its argument depends on a conclusion that Texas law applies.

For essentially the same reasons that C.R. Bard has not shown Texas law applies as to the statute of limitations, it has not shown Texas law applies as to the substance of the tort claims. Summary judgment is denied as to the negligent design claim.

## C.

C.R. Bard also seeks summary judgment on the failure-to-warn claims. The parties again disagree about the choice of law. The Mixsons rely on Florida law; C.R. Bard says Texas law applies. Under Florida law—on which the Mixsons exclusively rely—they cannot succeed.

Under the learned intermediary defense, "a manufacturer of prescription drugs or products discharges its duty to warn by providing the physician with information about risks associated with those products." *Christopher v. Cutter Laby's*, 53 F.3d 1184, 1192 (11th Cir. 1995) (citing *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989)). To prevail on a failure-to-warn claim, a plaintiff must establish that the breach of the duty to warn is the proximate cause of the injury. *Felix*, 540 So. 2d at 105. Here, the Mixsons cite no evidence from which a jury could find causation. Mixson's implanting physician testified that he "can't say for sure" if he read the filter's instructions for use. ECF No. 47-4 at 96:22-24. Though he said he'd "probably seen it," he did not believe he had "read it cover to cover," and he testified he had "probably not" read it before implanting Mixson's filter. *Id.* at 96:22-97:5.

The Mixsons point to the physician's general conversations with sales representatives who sold C.R. Bard's filters. Resp. at 25. But the passing reference to those conversations did not include specific discussions about the instructions for

8

use, *see* ECF No. 47-4 at 26:17-25—let alone explain why those conversations would impact the application of Florida's basic proximate cause standards.[4]

C.R. Bard is entitled to summary judgment on the failure-to-warn claim.

## D.

The Mixsons' claims for misrepresentation and fraud suffer the same defect as the failure-to-warn claim. The Mixsons points to no representation "personally relied upon" in choosing to have the filter implanted. *Foreline Sec. Corp. v. Scott*, 871 So. 2d 906, 910 (Fla. 2d DCA 2004). And any argument that Mixson's physician was not informed doesn't make up for the lack of evidence that it would have made any difference—that the physician would have had access to or relied upon any representation or that he was relying on any silence.

## E.

The last issue relates to punitive damages. Again, the parties disagree about the choice of law, and again, the significant-relationship test applies. "[T]he question of which state retains the greatest interest in applying its punitive damage rule should be analyzed separately from the question of which state retains the greatest interest

---

[4] The outcome would be the same under Texas law. *See, e.g.*, *In re DuPuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 888 F.3d 753, 775 (5th Cir. 2018) (applying Texas law and explaining that "causation entails two distinct factual predicates: first, that the doctor would have read or encountered the adequate warning; and second that the adequate warning would have altered his treatment decision for, or risk-related disclosures to, the patient" (footnote omitted)).

in applying its compensatory damage rule." *Judge*, 908 F.2d at 1571 n.6; *see also* Restatement (Second) Conflict of L. § 145 cmt. d ("Each issue is to receive separate consideration if it is one which would be resolved differently under the local rule of two or more of the potentially interested states.").

The three relevant states are Florida, Arizona, and Texas. As with the statute of limitations and compensatory damages claims, Florida has a greater interest than Texas because a Floridian—not a Texan—is the allegedly wronged party. Arizona also has a greater interest than Texas because Arizona has an interest in promoting uniformity and in protecting its resident companies. Texas's interest is the least of the three because—as the Mixsons argued as to compensatory damages—the Texas connection was fortuitous.

I need not decide whether Florida or Arizona has the greater interest because the outcome is the same either way. Under either Florida's law or Arizona's law, punitive damages are barred.

Under Florida law, "punitive damages may not be awarded against a defendant in a civil action if that defendant establishes, before trial, that punitive damages have previously been awarded against that defendant in any state or federal court in any action alleging harm from the same act or single course of conduct." Fla. Stat. § 768.73(2)(a). Defendants established that they have already paid punitive

damages in a related case over the manufacture, design, and sale of the filter. *See* ECF No. 57-12.

The Mixsons point to an exception that permits a second punitive damages award where "the court determines by clear and convincing evidence that the amount of prior punitive damages was insufficient to punish that defendant's behavior." Fla. Stat. § 768.73(2)(b). They claim that they can meet this exception, but they have not pointed to evidence supporting it. They have pointed, for example, to no evidence regarding intentional misconduct or gross negligence that might merit a greater award. *See id.* § 768.72(2). Instead, they merely note that the earlier award "represented just 0.1% of Bard's net worth at the time" and was "a fraction of a percent of Bard's then annual net profit of $2,594,000,000." Resp. at 32-33. This is not enough as a matter of law to show that the $2 million was insufficient. They argue filter sales are ongoing, but this too is insufficient as a matter of law. In short, the Mixsons have not proven by clear and convincing evidence that the earlier award was insufficient.

The Mixsons likewise cannot obtain punitive damages under Arizona law. In Arizona, a manufacturer is not liable for punitive damages when "[t]he product alleged to have caused the harm was designed, manufactured, packaged, labeled, sold or represented in relevant and material respects according to the terms of an approval, conditional approval, clearance, license or similar determination of a

government agency." Ariz. Rev. Stat. § 12-689(A)(1). It is undisputed here that the filter received FDA approval. ECF Nos. 57-3; 57-7; 57-11 at 9:3-4; *see also McMahill v. C.R. Bard, Inc.*, 2019 WL 4899720, *4 (Ariz. Super. Ct. July 23, 2019) (explaining that where "undisputed evidence shows" another of Bard's filters "received clearance from the FDA" that "[a]s a result, the statute bars plaintiff's claims for punitive damages"); *see also McBroom v. Ethicon, Inc.*, 2022 WL 604889, *5 (explaining that FDA "clearance nonetheless means that punitive damages are not available for [defendant's] allegedly defective design under § 12-689(A)(1)").

The Mixsons offer little in response. First they say the statute "is not retroactive" and it "went into effect in August 2012, after Mr. Mixson's claims were tolled." Resp. at 31. But they do not develop any retroactivity argument or explain how the tolling agreement would help. At any rate, the law was in place when the Mixsons sued, and under Arizona law, any claim for punitive damages does not vest until suit is filed. *Cf. Hall v. A.N.R. Freight Sys., Inc.*, 717 P.2d 434, 444 (Ariz. 1986); *see also Brunet v. Murphy*, 135 P.3d 714, 718 (Ariz. Ct. App. 2006), as corrected (July 6, 2006); *Ethicon, Inc.*, 2022 WL 604889, at *4 ("Plaintiff's right to punitive damages did not vest until she filed suit in March 2015, more than two years after § 12-689 went into effect" so "§ 12-689(A)(1) applies to the [defendant's] device cleared by the FDA)); *Haddon v. C.R. Bard Inc.*, 2021 WL 3131670, at *1

(D. Or. July 23, 2021) ("Under Arizona law, the operative date for retroactivity analysis is the date the lawsuit was filed."); *Ocasio v. C.R. Bard, Inc.*, 2020 WL 3288026, at \*2 n.1 (M.D. Fla. June 18, 2020) (similar). Thus, there is no retroactivity problem. *See Hall*, 717 P.2d at 445 (noting that the Arizona Supreme Court has "consistently defined statutory changes as retroactive only when they affect cases already in litigation").

The Mixsons also point to a statutory exception to the punitive-damages bar. Resp. at 31-32. Under the statute, the bar does not apply if the Mixsons establish that "[a]fter the product was sold or the service was provided, a government agency found that [C.R. Bard] knowingly violated regulations requiring the reporting to that government agency of risks of harm" and where "the unreported information was material and relevant to the harm that the [Mixsons] allegedly suffered." Ariz. Rev. Stat. § 12-689(B)(4).

This argument fails too. By its plain language, the statute only covers actions "before the activity or event" causing harm. The warning letter addressed inspections and complaint-reporting deficiencies in place in 2014 and 2015—after the 2008 implantation.

## III. CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 58) is GRANTED as to counts II, III, IV, & V and as to the punitive damages claims. The motion is otherwise DENIED.

SO ORDERED on September 16, 2022.

s/ <em>Allen Winsor</em>
United States District Judge