UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOSEPH CATLIN MIXSON and
VIRGINIA BREANN MIXSON,

    Plaintiffs,

v.

C. R. BARD, INC. and BARD
PERIPHERAL VASCULAR, INC.,

    Defendants.

Case No.: 1:21-cv-00030-AW-GRJ

# DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE BARD FROM INTRODUCING INTERNAL DATA BASED ON REPORTING RATES OF FILTER COMPLICATIONS

    Plaintiffs' Motion is essentially a refiled copy of a three-year-old motion that Judge Campbell denied in the Bard IVC Filter MDL, *In re Bard IVC Filters Prods. Liab. Litig.*, No. CV-16-00263-PHX-DGC, 2019 WL 1880029, at *2–3 (D. Ariz. Apr. 26, 2019).[1] Plaintiffs fail to inform this Court of that ruling, nor do they make any attempt to distinguish it. Plaintiffs also ignore the fact that evidence of Bard's internally calculated reporting rates (including the rate chart attached to Plaintiffs' motion as Doc. 102-1) were admitted during every MDL bellwether trial over the MDL plaintiffs' hearsay and Rule 403 objections (the same objections Plaintiffs

---

[1] *Cf.* **Ex. A**, Pls.' Motion in *Limine*, *In re Bard IVC Filters Prods. Liab. Litig.*, Case 2:15-md-02641-DGC, Doc. 16579 (D. Ariz. Mar. 29, 2019).

1

raises here).[2] Plaintiffs further fail to disclose that Bard's internal rates evidence was admitted in every other Bard IVC Filter remand case tried to date.[3] This highly relevant evidence is equally admissible in this case for the reasons below, and this Court should deny Plaintiffs' Motion.[4]

---

[2] *See, e.g.*, **Ex. B**, Trial Tr. at 2349:16–2351:8, *Booker v. C. R. Bard, Inc.*, MD-15-02641-PHX-DGC (D. Ariz. Mar. 2018) ("*Booker* Trial Tr.") (admitting over MDL plaintiff's hearsay objection Trial Exhibit 5874, which is Bard's reported rate chart).

[3] *See, e.g.*, *Laloli v. C.R. Bard, Inc.*, No. 19-CV-05679-JST, 2021 WL 3141190, at *1 (N.D. Cal. July 25, 2021) ("To the extent the motion seeks to preclude evidence of Bard's reported complication rates – whether internal, external, or otherwise – the motion is denied."); *accord Ocasio* v. *C. R. Bard, Inc.*, No. 8:13-CV-1962-CEH-AEP, 2021 WL 2787993, at *5 (M.D. Fla. July 5, 2021); *Johnson v. C.R. Bard Inc.*, No. 19-CV-760-WMC, 2021 WL 2070448, at *9 (W.D. Wis. May 24, 2021) (holding "this evidence appears central to the dispute in this case -- namely, whether the [Bard IVC] Filter was unreasonably dangerous, whether its warnings were adequate, and whether the benefits of the device outweigh its risks. If anything, plaintiff's objection goes to the weight, not the admissibility, of this evidence, and her motion will be DENIED."); **Ex. C**, Pretrial Conf. Tr. 18:11–19:21, *Peterson v. C. R. Bard, Inc.*, No. 3:19-cv-01701-MO, Doc. 161 (D. Or. April 20, 2021); **Ex. D**, Civil Minutes, *Peterson v. C. R. Bard, Inc.*, Case No. 3:19-cv-01701-MO, Doc. 159 (D. Or. April 21, 2021) (granting and denying in part similar motion in limine [7], as stated on the record); **Ex. E**, Order at 3, *Nolen v. C. R. Bard, Inc., et al.*, No. 3:19-cv-00799, Doc. 183 (M.D. Tenn. May 26, 2021) (granting and denying in part similar motion *in limine*, "as this information is relevant in many respects, and any defects in its internal processes can be explored by the plaintiff on cross-examination.").

[4] Pursuant to the law of the case doctrine, the transferor court's prior ruling "can be overcome only when: (1) new and substantially different evidence has been produced, or there is a change in the controlling authority; or (2) the prior decision was clearly erroneous and would result in a manifest injustice." *United States v. Greer*, 203 F. App'x 307, 308 (11th Cir. 2006) (citation omitted).

I.      **ARGUMENT AND CITATION OF AUTHORITY**

> **A. Bard's Internal Reported Complication Rates Are Highly Relevant and Trustworthy.**

Plaintiffs do not dispute the relevance of Bard's reported complication rates. Rather, they argue they are untrustworthy, and the prejudice outweighs their probative value. Like the rates reported in the SIR Guidelines, which Plaintiffs also move to exclude (Doc. 103), they go directly to the heart of the negligence issues in this case: whether Bard's action in designing the G2 Filter was reasonable, whether the G2 Filter was defective or "unreasonably dangerous," whether the reported failure rates are within those accepted as reasonable by the medical community, and whether the benefits of the G2 Filter outweigh its risks. Indeed, as part of its negligent design claim, Plaintiffs must prove that Bard was negligent in designing the G2 Filter ***and*** that as a result of that negligence the G2 Filter was defective or unreasonably dangerous. *Milana v. Eisai, Inc.*, No. 8:21-CV-831-CEH-AEP, 2022 WL 846933, at *5 (M.D. Fla. Mar. 22, 2022); *accord Valencia v. Sanborn Mfg. Co.*, No. 04-21416-CIV, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2005). To prevail on their claims, Plaintiffs must prove that the G2 Filter "was defective or unreasonably dangerous" under the risk-utility test, and that such defect was both the result of Bard's negligence and the proximate cause of their injuries. *Milana v.*

*Eisai, Inc.*, No. 8:21-CV-831-CEH-AEP, 2022 WL 846933, at *5.[5] This evidence also goes directly to whether the jury can conclude "a reasonable alternative design existed." *Cavanaugh* 308 So. 3d at 155 (Fla. Dist. Ct. App. 2020) (citing *Aubin v. Union Carbide Corp.*, 177 So. 3d 489 (Fla. 2015)). One of Plaintiffs' central claims is that the G2 Filter is defective because it causes higher rates of complication than other IVC filters—including Bard's Simon Nitinol Filter ("SNF"). Even if Plaintiffs proceed under the consumer expectation theory of defectiveness, Bard's internal rates are still highly probative of Bard's negligence, in addition to how Bard's filters

---

[5] As will be explained further in Bard's Trial Brief, the consumer expectation test does not apply to this case involving a complex medical device. *See Cavanaugh v. Stryker Corp.*, 308 So. 3d 149, 155-56 (Fla. 4th DCA 2020) (affirming the trial court's refusal to instruct the jury on consumer expectations and affirming the risk-utility test as the only applicable test "to a complex medical device accessible to the consumer only through a medical professional"), *review denied*, No. SC21-219, 2021 WL 3485938 (Fla. Aug. 9, 2021)). Cavanaugh is binding on this Court, particularly since the Florida Supreme Court declined review. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 848 (11th Cir. 2018) (Florida law) ("State law is what the state appellate courts say it is, and we are bound to apply a decision of a state appellate court about state law even if we think the decision is wrong."). Factors that the jury may consider when weighing the risks and benefits of the design include: (1) the usefulness and desirability of the product, including the potential that it had to improve Mr. Mixson's condition; (2) the availability at the time of Mr. Mixson's implant surgery of other and safer products to meet the same need; (3) the likelihood of injury and its probable seriousness; (4) the obviousness of the danger; (5) common knowledge and normal public expectation of danger; (6) the avoidability of injury by care and use of the product; and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive. *See Hobart Corp. v. Siegle By & Through Hoerber*, 600 So. 2d 503, 505 n.4 (Fla. DCA 1992).

performed compared to what the ordinary physician expected regarding the risks of IVC filters.

Instead, Plaintiffs raise concerns with the quality of Bard's data, which is an issue for cross-examination, not exclusion. But Bard has been fully candid in explaining what its reporting rates are, and what they are not. Bard's former VP for Quality, Mr. Chad Modra, has testified that Bard's calculation of reported IVC filter complication rates is based on the number of reported complaints that Bard uncovers and identifies from multiple sources—which Bard documents in a database called "Trackwise," (*see* **Ex. B**, *Booker* Trial Tr. 2341:2-8; 2348:12-16)—and Bard's sales data. (*Id.* at 2341:14-20.)[6] Bard anticipates Mr. Modra—or another witness with comparable knowledge—will testify regarding these matters during the trial of this case. Bard recognizes its internally calculated **reporting rates** do not constitute the precise complication rates. (*Id.* at 2352:8-10.) But whether a certain percentage of IVC filter complaints are underreported, as Plaintiffs allege, is of no moment. Bard recognizes some degree of underreporting may exist, (*id.* at 2352:25-2353:6), and

---

[6] Plaintiffs' argument that "there is no way to substantiate the rates in the chart" is unavailing. As Plaintiffs should know from the MDL proceedings and the briefing on this identical motion, Bard produced the contents of its Trackwise database and its internal sales figures years ago. Moreover, contrary to Plaintiffs' argument and consistent with Judge Campbell's ruling in the MDL, Bard will not use the reporting rates to claim Recovery Filters are "99.9% effective." *In re Bard IVC Filters*, 2019 WL 1880029, at *3 n.2.

does everything possible to minimize the impact by aggressively investigating all reports of potential complications. Its internal calculations reflect the rates of reported complications based on that robust process, and do not purport to reflect the actual complication rate with absolute certitude. (*Id.* at 2347:22–2348:8.)

Mr. Modra's testimony confirms the trustworthiness of the data.[7] Bard routinely monitors, tracks, and trends product complication rates, including updating reported rate information on a monthly basis, (*id.* at 2340:4–7), and can calculate reported rates at any point. (*Id.* at 2341:2-20.) These activities are conducted pursuant to Bard's internal standard operating procedures (*id.* at 2335:19 - 2336:5; 2338:8 - 2340:7; 2349:4-11), and Bard relies on the reported rate calculations when making product risk assessments. (*Id.* at 2259:8–16.) Moreover, Bard has a substantial interest in ensuring the accuracy of its reported rate calculations, given Bard is required under federal regulations to keep and maintain quality system records and to "evaluat[e] complaints by a formally designated unit." 21 C.F.R. § 820.198(a).

---

[7] Plaintiffs argue FDA found in the Warning Letter that Bard underreported and misclassified adverse events. (*See* Doc. 102 at 2.) As explained in Bard's Motion *in Limine* to Exclude the FDA Warning Letter, FDA's allegations in the Letter do not impact the accuracy or reliability of Bard's reported rate calculations. (*See* Doc. 99; **Ex. B**, *Booker* Trial Tr. 2326:1-2327:2.) At most, Plaintiffs' erroneous argument— even if valid—would be a topic for cross-examination, not exclusion of Bard's highly relevant reported rates evidence.

Plaintiffs claim Bard's reported rate calculations are unreliable because the numbers on Bard's charts do not match the "over 4,000 cases filed against Defendants in various jurisdictions" who have filed cases against Bard. (Doc. 102 at 2.) Again, Plaintiffs ignore that Judge Campbell denied this identical argument in the MDL and admitted this precise evidence in every MDL bellwether trial. Regardless, Plaintiffs fail to note the rate chart contains data involving 2,959 patients through the end of 2016, when fact discovery in the MDL was nearing completion. Bard's calculations included all complications reported in lawsuits as of that date (to the extent they alleged one of the failure modes identified). Data that included all MDL complaints would be less reliable because the rates would be based entirely on the characterization of the complications by the MDL plaintiffs' attorneys. Bard identified this same December 2016 rates chart as a trial exhibit in this case because Plaintiffs' trial counsel is familiar with it from the MDL bellwether trials and thus had fair notice of those rates. Plaintiffs take issue with the timing of this data, but if Bard's motion to exclude post-implant evidence (Doc. 95) is granted, Bard is willing to substitute this December 2016 chart with a chart of rates through September 2007, which would include all rates of complications reported before Mr. Mixson was treated with the Filter.[8]

---

[8] Plaintiffs' cursory footnote request to offer summaries of "all complaints," including "internal complaint files" and "MAUDE data," (which in their previously denied versions of this motion also explicitly included "legal complaints") to counter

Further, Bard recognizes the number of IVC filters it has sold is not the same number of IVC filters implanted in patients, and Bard will not represent the same to the jury. Mr. Modra's prior testimony is clear that not all IVC filters sold are actually implanted. (*See* **Ex. B**, *Booker* Trial Tr. 2352:11-13.). But, as Mr. Modra explains, given the relative price of Bard's filters, the large majority of filters sold are likely implanted. (*Id.* at 2352:14–24.) Also, Bard uses the number of filters sold as the "denominator" to calculate its reported complication rates, as discussed above (*id.* at 2341:14–20).

Bard's internally calculated reported rates for the Filter are highly probative evidence that Bard will present in appropriate context. Given the clear relevance of the evidence, Plaintiffs' Rule 403 arguments regarding the quality of the data are best reserved for cross examination.

## II.   CONCLUSION

For these reasons, Bard requests that this Court deny Plaintiffs' Motion.

---

this evidence should be denied. (Doc. 102 at 3 n.1) Even if this request was made in good faith, for the same reasons as explained in Bard's Motion in *Limine* to Exclude Evidence Regarding Recovery Filter Migration Deaths, Plaintiffs would need to first demonstrate "substantial similarity" between Mr. Mixson's experience with his Filter and those of the thousands of other patients with any Bard IVC filter before this evidence could be admissible, which he cannot do. (*See* Doc. 96 at 10–17.) And even if theycould, its minimal probative value would be cumulative of Plaintiffs' statistical expert and would be substantially outweighed by the danger of confusing the issues, misleading the jury, and unfairly prejudicing Bard under Rule 403. Again, Judge Campbell denied an identical motion with this identical footnoted request. *See In re Bard IVC Filters*, 2019 WL 1880029, at *3. This Court should too.

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), counsel certifies that this Memorandum contains 2,207 words.

Dated: October 11, 2022                     Respectfully submitted,

*/s/ Matthew B. Lerner*
Matthew Brian Lerner
Florida Bar No. 548618
Email: matthew.lerner@nelsonmullins.com
Richard B. North, Jr.
Admitted *pro hac vice*
Email: richard.north@nelsonmullins.com
Dennis Andrew Hom
Admitted *pro hac vice*
Email: dennis.hom@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Tel: (404) 322-6000
Fax: (404) 322-6050

*Counsel for Defendants C. R. Bard, Inc., and Bard Peripheral Vascular, Inc.*